BENNETT *v.* WEIL BROTHERS' PLANTATION COMPANY.

Opinion delivered October 25, 1926.

1. EMINENT DOMAIN—AUTHORITY TO DIG DITCH.—Under Sp. Acts 1911, p. 352, authorizing a landowner within a certain drainage district to institute proceedings to condemn a right-of-way across the land of an intervening landowner who refuses permission to cross his land, *held* that it was not necessary to dig a new ditch where an existing ditch could be enlarged to carry the water.

2. APPEAL AND ERROR—MOOT CASE.—Where plaintiff procured a permanent injunction against defendant's bringing a condemnation proceeding to enlarge a ditch across his property, and the district commissioners enlarged the ditch during the pendency of the appeal, question on the appeal did not become moot, since the issue of damages for wrongful procurement of the injunction remained.

Appeal from Jefferson Chancery Court; *H. R. Lucas,* Chancellor; reversed.

*Coleman & Gantt,* for appellant.

*Sam M. Levine* and *Danaher & Danaher,* for appellee.

HUMPHREYS, J.   This action was instituted in the chancery court of Jefferson County by appellee against appellants to enjoin them from prosecuting a suit in the circuit court of said county, which they had brought against it to condemn a right-of-way for a drainage ditch across its lands, under act No. 144 of the Acts of 1911, amending act No. 283 of 1907, creating Cousart Bayou Drainage District.

Appellants and appellee owned large tracts of adjoining lands within said drainage district, upon which they paid drainage taxes.   The lands of appellants lay to the north of those of appellee, and were in sections 14, 23 and 24, while those of appellee were in sections 25 and 26, all being in township 6 south, range 8 west.   Lateral ditch No. 3 was a component part of the drainage system in said district, its purpose being to drain Glen Lake, mainly in section 23, and surrounding lands.   The original purpose was to dig it with a dredgeboat for its entire length of 9,600 feet.   It emptied into the main canal near the north line of section 25, and traversed the

lands of both appellee and appellants, running in a northerly direction to a point east of Glen Lake. At the time the lateral was being dug, growing crops were upon the lands now belonging to appellee and appellants. They were then owned by other parties, who objected to holding the water in the ditch which was necessary to float the boat, so they consented that the drainage of the lake might be deferred. When one-half of the lateral had been dug with the dredgeboat, the remainder of the ditch was dug with scrapers after the dredgeboat had been removed. The upper half thereof was not of size and depth sufficient to care for the drainage it was planned to receive.

The upper part of the ditch passed through the lands of both appellee and appellants, and ran on the east side of Glen Lake.

Glen Lake was mostly upon the land belonging to appellants, and the purpose of the condemnation suit brought by them in the circuit court was to obtain the right to widen and deepen lateral No. 3 over and across appellee's land to the point reached by the dredgeboat before its removal. The plan of appellants was to dig a ditch from the lake to the lateral across their own land and to widen and deepen the lateral from the point of intersection across their own land, as well as the land of appellee, so as to conform to the original design and purpose of the lateral.

It was alleged in the injunction suit that the statute relied upon by appellants in the condemnation suit did not confer power upon a private property owner in the district to condemn land for the purpose of widening and deepening a lateral ditch. This allegation was controverted by appellants, and the cause proceeded to a trial, which resulted in the rendition of a decree permanently enjoining appellants from prosecuting their condemnation suit.

At the time the injunction suit was instituted a bond was filed by appellee to pay appellants for all damages they might sustain if it was finally determined that the

writ was wrongfully issued. With the filing of the bond, further construction work upon the ditch by the contractors employed by appellants ceased.

During the pendency of this appeal the commissioners of the district completed the lateral in accordance with the original plans.

This appeal involved the sole question of whether appellants were entitled to maintain a condemnation suit under act No. 144 of the Acts of 1911, for the purpose of enlarging lateral No. 3, over and upon appellee's land. That act provides:

"Any landowner within the Cousart Bayou Drainage District, as created by act No. 283 of the Acts of the General Assembly of this State for the year 1907 and the acts amendatory thereof, whose lands are assessed for drainage taxes by said district, may construct ditches to drain such lands into the public ditches of said drainage district, and if any intervening landowner should refuse permission to cross his lands with such ditch, the landowner seeking to construct such ditch may, by proceedings in the circuit court, to be conducted in the same manner as condemnation proceedings instituted by railroads, telegraph and telephone companies, condemn a right-of-way for such ditches. In such proceedings the jury shall deduct from the damages the benefit that will accrue to such landowner by the construction of such ditch, and said intervening landowner shall have the right to use such ditch for the drainage of his own land."

Manifestly the purpose of the act was to afford drainage of lands in the district assessed for drainage taxes and to allow the landowner to condemn a right-of-way, if necessary, across intervening lands, to construct ditches to convey the water into the public ditches of the district.

The lower half of lateral No. 3 was regulation size, but the upper half was insufficient in width and depth to receive and carry the water from Glen Lake and the land surrounding it.

In order to drain the lake and surrounding land, it was necessary to dig an additional ditch from the lake along the general course of the lateral across appellant's lands and the intervening lands of appellee, to the north end of the lower lateral which had been dug by the dredgeboat, or to intersect the upper lateral with a ditch from the lake, then widen and deepen the upper lateral from the point of intersection, through the lands of appellants and through the intervening lands of appellee.

The statute in question must be strictly construed, as the only authority to condemn a right-of-way across intervening lands is conferred by it; but a strict construction does not mean that a new ditch must be dug over the right-of-way, when an existing ditch thereon may be enlarged, at much less expense, to carry the water. The statute does not say the ditch must be a new one, and there is no necessity for making such an interpolation in order to ascertain the true purpose and intent of the act.

The language of the act is to construct a ditch. We think it would be extremely technical to say the enlargement of an old ditch did not amount to the construction of a ditch. It is true that the act provides that the landowner may construct a ditch over intervening lands to drain his lands into the public ditches, but the enlargement of one of the public ditches to drain his land would not change the course of the water, and thereby force the construction that the act contemplated the construction of new ditches only.

Our conclusion is, under the rule of strict interpretation, that the widening and deepening of lateral No. 3 was, in effect, constructing a ditch within the meaning of act No. 144 of the Acts of 1911.

It is suggested that the appeal should be dismissed because the question at issue has become moot on account of the completion of the upper part of lateral No. 3 by the district since the trial.

The completion of the ditch did not dispose of the only question involved, except liability for costs. The

issue of damages occasioned by the wrongful procurement of the injunction remains, and necessitates, that the appeal be heard and determined.

On account of the error indicated the decree is reversed, with instructions to dissolve the injunction and dismiss the bill, and for further proceedings.